# United States Court of Appeals for the Federal Circuit

---

**APPLE INC.,**
*Appellant*

**v.**

**QUALCOMM INCORPORATED,**
*Appellee*

---

2020-1683, 2020-1763, 2020-1764, 2020-1827

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2018-01276, IPR2018-01281, IPR2018-01282, IPR2018-01460.

---

Decided: November 10, 2021

---

LAUREN ANN DEGNAN, Fish & Richardson P.C., Washington, DC, argued for appellant. Also represented by CHRISTOPHER DRYER; BRIANNA LEE CHAMBERLIN, ROBERT COURTNEY, Minneapolis, MN; OLIVER RICHARDS, San Diego, CA; LANCE E. WYATT, JR., Dallas, TX.

JONATHAN S. FRANKLIN, Norton Rose Fulbright US LLP, Washington, DC, argued for appellee. Also represented by PETER B. SIEGAL; STEPHANIE DEBROW, EAGLE

HOWARD ROBINSON, Austin, TX; DANIEL LEVENTHAL, RICHARD STEPHEN ZEMBEK, Houston, TX.

_____

Before NEWMAN, PROST, and STOLL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

PROST, *Circuit Judge*.

Apple Inc. ("Apple") appeals four decisions of the Patent Trial and Appeal Board ("Board") determining that claims of patents owned by Qualcomm Inc. ("Qualcomm") weren't proven unpatentable. This is the second such dispute to reach us since these parties settled all their patent-infringement litigation worldwide and entered a global patent license agreement. In the first, we dismissed because Apple lacked Article III standing before this court. *Apple Inc. v. Qualcomm Inc.*, 992 F.3d 1378, 1385 (Fed. Cir. 2021) ("*Apple I*"). Along the way, *Apple I* foresaw that the standing issue "impacts . . . other appeals." *Id.* at 1382. Confronted here with identical operative facts, we do no more than follow in the wake of *Apple I*. We dismiss.

BACKGROUND

I

We begin with a flashback to *Apple I*. First, Qualcomm accused Apple in the Southern District of California of infringing various patents. *Id.* at 1381. Next, Apple petitioned the Board for inter partes review ("IPR") of those patents.[1] *Id.* Then, in 2019, the parties settled all their patent-infringement litigation worldwide and entered a six-year global patent license agreement with a two-year extension option, resulting in dismissal of the infringement

_____

[1]    U.S. Patent Nos. 7,844,037 and 8,683,362.

case with prejudice. *Id.* After the Board determined that Apple failed to prove various claims unpatentable, Apple appealed and Qualcomm challenged Apple's standing. *Id.*

Apple responded with three theories. First, Apple asserted standing under *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), highlighting its "ongoing payment obligations that are a condition for certain rights in the license agreement." *Apple I*, 992 F.3d at 1383. But the *Apple I* court saw in this argument a "fatal" failure of proof: Apple "nowhere argue[d] or provide[d] evidence that the validity of any single patent . . . would affect its ongoing payment obligations," nor "identif[ied] any contractual dispute . . . that relates to, or could be resolved through a validity determination of, the patents at issue." *Id.* at 1383–84. Second, Apple relied on "the threat that [it] will be sued for infringing . . . after the expiration of the license agreement." *Id.* at 1383. Once again, *Apple I* noted "deficiencies in [Apple's] evidence"—for example, that Apple submitted "the sparsest of declarations," which didn't "even mention the patents at issue" or "set forth any plans to engage in conduct after the expiration of the license agreement that might lead to an infringement suit." *Id.* at 1384. For this and other reasons, *Apple I* also rejected Apple's third theory, that 35 U.S.C. § 315(e) would likely estop it from challenging these patents in the future. *Id.* at 1385 (rejecting "invocation of the estoppel provision as a sufficient basis for standing" (quoting *AVX Corp. v. Presidio Components, Inc.*, 923 F.3d 1357, 1362–63 (Fed. Cir. 2019))). Consequently, *Apple I* dismissed Apple's appeal for lack of standing.

## II

We turn now to these consolidated appeals. As with the *Apple I* patents, Qualcomm accused Apple in the Southern District of California of infringing the patents at issue here. And, like in *Apple I*, Apple petitioned the Board

to review those patents.[2]  Then came the settlement and license agreement, resulting in dismissal of the district court action with prejudice.  After that, the Board issued final written decisions concluding (like in *Apple I*) that Apple hadn't proven various claims unpatentable.  Apple appealed, Qualcomm moved to dismiss for lack of standing, and Apple filed an opposition supported by the exact same declarations it submitted in *Apple I*.  We denied Qualcomm's motion and directed the parties to address standing in their briefs.

*Apple I* issued when merits briefing across these appeals was complete except for one reply brief.  In that brief, Apple acknowledged that we are "bound by the specific holdings of the prior panel." Reply Br. 26.[3]  Although Apple said it "presented additional arguments" that "the prior panel decision did not address," the only such argument it identified was a request (in that last brief) that we vacate the Board's underlying decisions if we dismiss for lack of jurisdiction.  Reply Br. 26.  Qualcomm, for its part, raised *Apple I* in a supplemental authority letter—asking us to "summarily dismiss . . . without argument" because *Apple I* was "based on identical facts" and "rejected the same arguments" made here.  Citation of Suppl. Authority at 1–2 (April 16, 2021), ECF No. 49.  Apple didn't respond.

After the en banc court denied rehearing in *Apple I*, Qualcomm submitted another supplemental authority letter repeating its request.  Citation of Suppl. Authority at 1 (July 21, 2021), ECF No. 65.  This time, Apple responded: "Although Apple continues to disagree with [*Apple I*], in light of that decision and the . . . order denying Apple's

---

[2]    U.S. Patent Nos. 9,024,418 (subject of IPR2018-01460), 8,768,865 (subject of IPR2018-01281 and IPR2018-01282), and 8,971,861 (subject of IPR2018-01276).

[3]    For simplicity, all citations to the appellate record are to No. 20-1827.

petition for rehearing en banc, Apple believes that the present appeal can be resolved on the briefs without the need for oral argument." Resp. to Citation of Suppl. Authority at 1 (July 23, 2021), ECF No. 66 ("Appellant's 28(j) Response"). Apple then asked us to "vacate the current oral argument and resolve the appeal without argument" as we "deem[] appropriate." Appellant's 28(j) Response at 1. Shortly thereafter, the parties filed a joint motion to "vacate oral argument." Joint Mot. at 1 (July 27, 2021), ECF No. 67 (capitalization normalized). We instead held a consolidated oral argument. There, Apple reiterated its disagreement with *Apple I* but acknowledged that the operative facts in this case were "the same." Oral Arg. at 6:40–43, 38:30–58.[4]

## DISCUSSION

The Constitution limits federal judicial power to deciding "Cases" or "Controversies." U.S. CONST. art. III, § 2. Constitutional standing doctrine, which "limits the category of litigants empowered to maintain a lawsuit in federal court," flows from this requirement. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, the party invoking federal jurisdiction must demonstrate (1) an "injury in fact" that is (2) "fairly traceable" to the defendant's challenged conduct and is (3) "likely to be redressed by a favorable judicial decision." *Id.* That's the "irreducible constitutional minimum." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Article III standing "is not necessarily a requirement to appear before an administrative agency." *Consumer Watchdog v. Wis. Alumni Rsch. Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014). IPR petitioners, for example, "may lack constitutional standing." *Cuozzo Speed Techs., LLC v.*

---

4    https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1827_08022021.mp3.

*Lee*, 136 S. Ct. 2131, 2143–44 (2016) (first citing 35 U.S.C. § 311(a); and then citing *Consumer Watchdog*, 753 F.3d at 1261–62). But the standing requirement "'kicks in'" when "a party seeks review in a federal court." *Consumer Watchdog*, 753 F.3d at 1261 (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)). Indeed, the "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)). Such injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (cleaned up). For example, it's generally enough for an IPR petitioner to show that "it has engaged in, is engaging in, or will likely engage in 'activity that would give rise to a possible infringement suit.'" *Grit Energy Sols., LLC v. Oren Techs., LLC*, 957 F.3d 1309, 1319 (Fed. Cir. 2020) (quoting *Consumer Watchdog*, 753 F.3d at 1262).

I

We do not write on a blank slate in assessing Apple's standing here. Rather, as presaged above, the writing is already on the wall. As Apple admits, "the operative facts are the same" here as in *Apple I*. Oral Arg. at 6:40–43. In both cases Qualcomm sued Apple for patent infringement, Apple petitioned for IPR, the parties settled and licensed, Apple failed to prove certain claims unpatentable at the Board, and Apple appealed. Even Apple's declarations in support of standing are the same. True, the patents are different. But that's irrelevant because the settlement and license agreement cover both sets of patents. The cases are on all fours.

Nonetheless, Apple raises a "nuance" that it says *Apple I* didn't "specifically address[]." Oral Arg. at 6:35–39. In its view, *Apple I* "did not explain why the threat of liability, if Apple ceases the ongoing payment and the agreement is terminated, is not a sufficient injury to support

standing." Oral Arg. at 5:00–40. But we're unconvinced that this "nuance" allows us to turn back the clock on *Apple I*. "Panel opinions are, of course, opinions of the court and may only be changed by the court sitting en banc." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316 (Fed. Cir. 2013) (en banc). As a panel, we're bound by stare decisis. We can't defy *Apple I* by dealing differently with its double. And as Apple acknowledges, this "nuance" was at the heart of its denied en banc petition in *Apple I*. Oral Arg. at 5:40–6:18. Per *Apple I*, therefore, we dismiss for lack of standing.

## II

Next we consider Apple's request that, if we lack jurisdiction, we should vacate the Board's decisions "to eliminate any doubt about the applicability of estoppel." Reply Br. 25–26. In support, Apple cites *United States v. Munsingwear, Inc.*, which directs courts to vacate the underlying decision in certain appeals that have become moot during their pendency, "clear[ing] the path for future relitigation." 340 U.S. 36, 40 (1950).[5] We see no good reason why, in view of the settlement and our directive to address standing in the merits briefs, Apple made this request only in its last-filed reply brief and at oral argument instead of in its opening brief.

At any rate, the request is misplaced. *Munsingwear* concerns mootness, not standing. To be sure, the doctrines together require that "[a]t all stages of litigation, a plaintiff must maintain a personal interest in the dispute." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). But they are distinct. "The doctrine of standing generally assesses whether that interest exists at the outset, while the

---

[5] *Munsingwear* is "at least equally applicable to unreviewed administrative orders." *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329 (1961).

doctrine of mootness considers whether it exists throughout the proceedings." *Id.* Because Apple's injury disappeared before it invoked our jurisdiction, Apple's problem is lack of standing at the outset of the appeal, not mootness. As Apple recognizes, "*Munsingwear*-type vacatur arises where a case has become moot while the case is on appeal." Oral Arg. at 1:22–40; *see, e.g.*, *Gould v. Control Laser Corp.*, 866 F.2d 1391, 1395 (Fed. Cir. 1989) (explaining that *Munsingwear* did not apply where a settlement and consent judgment entered before appeal "foreclosed this court from obtaining jurisdiction"). Apple asks us to "extend that approach to the facts of this case," which it believes "include an element of mootness." Oral Arg. at 1:22–40. That's an invitation to "confuse[] mootness with standing." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). We decline it.

And even if this could be framed as mootness, vacatur would *still* be inappropriate because the jurisdiction-destroying event is a settlement Apple voluntarily entered. The decision whether to vacate hinges on the "conditions which have caused the case to become moot," especially "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) (cleaned up). To one side are cases in which an appellant, "frustrated by the vagaries of circumstance" or the "unilateral action" of the appellee, "ought not in fairness be forced to acquiesce in the judgment." *Id.* at 25. To the other are cases like this one, in which "mootness results from settlement" such that "the losing party has voluntarily forfeited his legal remedy . . . thereby surrendering his claim to the equitable remedy of vacatur." *Id.* The lines, therefore, are already drawn for us. "[M]ootness by reason of settlement

does not justify vacatur of a judgment under review." *Id.* at 29.[6] We therefore deny Apple's request.

CONCLUSION

We consistently dismiss IPR appeals if the petitioner lacks standing. *E.g.*, *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1176 (Fed. Cir. 2017); *JTEKT Corp. v. GKN Auto. LTD.*, 898 F.3d 1217, 1221 (Fed. Cir. 2018); *AVX*, 923 F.3d at 1367; *Gen. Elec. Co. v. United Techs. Corp.*, 928 F.3d 1349, 1355 (Fed. Cir. 2019); *Argentum Pharms. LLC v. Novartis Pharms. Corp.*, 956 F.3d 1374, 1378 (Fed. Cir. 2020). More than that, we have a case on point here: *Apple I*. We therefore end where we began. *Apple I* controls. We have considered Apple's remaining arguments but find them unpersuasive. Because Apple lacks Article III standing, we dismiss for lack of jurisdiction.

**DISMISSED**

---

[6]    For the first time at oral argument, Apple relied on *Alvarez v. Smith*, 558 U.S. 87, 94–97 (2009) and *American Family Life Assurance Co. of Columbus v. FCC*, 129 F.3d 625, 630 (D.C. Cir. 1997), both of which granted vacatur under *Munsingwear*. But those cases expressly distinguished the rule of *Bancorp* because it is triggered by voluntary settlement—which wasn't the circumstance in those cases but is precisely Apple's circumstance here. Our conclusion, therefore, is unchanged.

# United States Court of Appeals
# for the Federal Circuit

---

**APPLE INC.,**
*Appellant*

**v.**

**QUALCOMM INCORPORATED,**
*Appellee*

---

2020-1683, 2020-1763, 2020-1764, 2020-1827

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2018-01276, IPR2018-01281, IPR2018-01282, IPR2018-01460.

---

NEWMAN, *Circuit Judge*, dissenting.

I respectfully dissent. The Federal Circuit is not divested of its statutory jurisdiction to receive appeals of decisions of the Patent Trial and Appeal Board when the parties to an inter partes review have entered into a license agreement. Precedent is clear that a patent licensee may challenge the patent's validity in federal court without loss of Article III standing due to the existence of a license.

In this case the license was for a term of six years, not for the life of the patents. All three patents[1] of these

---

[1] There are three patents and four inter partes review decisions on this consolidated appeal hearing.

2                          APPLE INC. v. QUALCOMM INCORPORATED

appeals have a longer life span, but Apple states (without contradiction) that Qualcomm refused Apple's request for licenses for the life of the patents.  Apple states that there is continuing controversy about validity of the licensed patents, and that denial of standing to appeal the PTAB decisions will subject Apple not only to continuing royalty obligations, but also to the risk of estoppel in any district court proceedings after the license terminates.

Ignoring this continuing controversy, my colleagues on this panel hold that Apple has no standing to appeal these PTAB decisions, despite the statutory authorization for appeal to the Federal Circuit, 35 U.S.C. § 329 and § 141, and despite the statutory estoppel of 35 U.S.C. § 325(e).  My colleagues cite a prior opinion of the court on different patents, and hold that Apple's entry into the six-year license eliminated Federal Circuit appellate jurisdiction based on Article III of the Constitution.  *See Apple Inc. v. Qualcomm Inc.*, 992 F.3d 1378 (Fed. Cir. 2021) (*Apple I*).

However, a licensee always has standing to challenge validity of the licensed patent; the America Invents Act did not abrogate that right, established in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) (overturning licensee estoppel).  The AIA further assured that decisions of the PTAB are appealable to the Federal Circuit.  There is no qualification as to whether the appellant is a licensee.

The parties hereto recognized in their license agreement that there were ongoing PTAB proceedings that would proceed in conformity with the statute.  Nonetheless, the panel majority now holds that Apple has no standing to appeal, and that the Federal Circuit has no jurisdiction, because Apple is a licensee of these patents.  Maj. Op. at 6–7.  The statutory provision for appeal is contrary:

**35 U.S.C. § 141 – Appeal to Court of Appeals for the Federal Circuit.**

> (c) *Post-Grant and Inter Partes Reviews.*— A party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) or 328(a) (as the case may be) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

This right of appeal is integral to the AIA's post-grant system for determinations of patent validity, for the decision resolves certain validity issues and is binding in the district court and the International Trade Commission; the decision cannot be reviewed in a civil action or by the ITC. These consequences of themselves establish Article III standing. *See Amerigen Pharms. Ltd. v. UCB Pharma GmBH*, 913 F.3d 1076, 1084 (Fed. Cir. 2019) (standing to appeal exists where invalidation of patent would allow petitioner "to launch its competing product substantially earlier than it otherwise could upon the patent's expiration."); the court stated that "'where Congress has accorded a procedural right to a litigant, such as the right to appeal an administrative decision, certain requirements of standing—namely immediacy and redressability, as well as prudential aspects that are not part of Article III—may be relaxed.'" *Id.* at 1082 n.11 (quoting *Consumer Watchdog v. Wis. Alumni Rsch. Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014)).

Here, "Congress has accorded a procedural right . . . to appeal," *id.*, assured in 35 U.S.C. § 141. My colleagues' contrary ruling contravenes the statute. I respectfully dissent.

DISCUSSION

I

### *The controversy between Apple and Qualcomm is not eliminated by the license grant*

Qualcomm argues that there is no Article III controversy because it is "speculative" whether Apple might be infringing these patents when the license expires in 2025. Each of the three patents subject of this appeal is for a different invention, for which Apple products were charged with infringement in district court proceedings. For each patent, Apple then challenged validity in the PTAB based on different combinations of prior art, and each patent received a different analysis and decision. *See* [1] Appeal Case No. 20-1683 (upholding all claims of Patent No. 8,971,861); [2] Case No. 20-1763 (upholding claims 4 and 23 but invalidating claims 1–3, 5, 6, 8–22, 24, 25, 27–30, 46–49, and 51–53 of Patent No. 8,718,865); [3] Case No. 2-1765 (upholding claims 4, 5, 23, 24, and 48 of Patent No. 8,168,865); and [4] Case No. 20-1827 (upholding claims 1, 2, 4, 5, 8, 12, 13, 15–19, and 20, but invalidating claims 3, 9, 10, and 14 of Patent No. 9,024,418).[2]

Each of these appeals presents different issues and arguments and different technologic aspects of the devices that Qualcomm charged with infringement, in a complaint filed in the Southern District of California in 2017.

---

[2]    The '861 patent relates to a method, system and apparatus for monitoring the user's physiological state; Qualcomm accused the Apple Watch and Apple iPhone of infringing this patent. The '865 patent relates to machine learning to correlate certain states of a mobile device; Qualcomm accused Apple's iPhone and iPad of infringing this patent. The '418 patent relates to certain characteristics of cells in circuitry; Qualcomm accused Apple's iPhone of infringing this patent.

*Qualcomm Inc. v. Apple Inc.*, 3-17-CV-02402-WQH-MDD (S.D. Cal. Nov. 29, 2017). Qualcomm focused primarily on the Apple iPhone and the Apple Watch. The license agreement terminated the litigation, but the agreement recognized the ongoing PTAB proceedings, and recited that the inter partes reviews would continue.

Apple reasonably states that the accused products are likely to continue to be in commerce when the license expires in 2025, noting that U.S. Patent No. 8,971,861, for example, does not expire until 2031. Precedent recognizes that such concerns provide standing. *See Medimmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (patent licensee has standing to challenge validity of licensed patents, without cancelling the license or breaching the license terms). In *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), the Court observed that when litigation is settled between the parties to an infringement suit, the test for Article III controversy is whether the plaintiff "'could not reasonably be expected' to resume its enforcement efforts." *Id.* at 92 (quoting *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). In *Already v. Nike*, the settlement provided a perpetual release for Nike and its customers, and on that ground was held to end the controversy; in contrast, here Qualcomm refused the requested license for the life of the patents.

The Court in *Lear v. Adkins, supra,* established that a licensee has standing to challenge the patents to which it is licensed, without the need to terminate or breach the license. The Federal Circuit has faithfully implemented this rule; *see, e.g., Adidas AG v. Nike, Inc.*, 963 F.3d 1355, 1357 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021) ("We determined that the patent owner's refusal to grant appellant a covenant not to sue further confirmed that appellant's risk of injury was not 'conjectural' or 'hypothetical'") (citing *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1004–05 (Fed. Cir. 2018)); *JTEKT Corp. v. GKN Auto. LTD.*, 898 F.3d 1217, 1220 (Fed. Cir. 2018) (the

reasonable likelihood of future controversy sufficed to satisfy Article III, although the potential infringer "has no product on the market at the present time [this] does not preclude Article III standing, either in IPRs or in declaratory judgment actions."); *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1173 (Fed. Cir. 2017) (it suffices under Article III if the challenger is "an actual or prospective licensee of the patent . . . ."). In *Powertech Technology Inc. v. Tessera, Inc.*, 660 F.3d 1301 (Fed. Cir. 2011) we explained:

> [Patent owner] appears to maintain that there can be no Article III controversy as long as [licensee] complies with all the terms of the license agreement, including the payment of royalties. In essence, [patent owner's] argument is that [licensee] must breach its license before it can challenge the validity of the underlying patent. This contention, however, is contrary to the Supreme Court's decision in *MedImmune*, in which the Court held that a licensee did not need to repudiate a license agreement by refusing to pay royalties in order to have standing to declare a patent invalid, unenforceable, or not infringed. . . .

660 F.3d at 1308. *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1364 n.5 (Fed. Cir. 2010) ("[T]he license provision of the Settlement Agreement did not bar an invalidity challenge. In both *Lear* and in *MedImmune* . . . the Supreme Court held that a licensee under such an agreement may challenge the validity of the patent."); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (patentee can cause an injury by, *inter alia*, "demanding the right to royalty payments . . . .").

Appeals from PTAB decisions are subject to this extensive precedent. In *Altaire Pharmaceuticals, Inc. v. Paragon Bioteck, Inc.*, 889 F.3d 1274, 1282 (Fed. Cir. 2018), *remand order modified by stipulation*, 738 F. App'x 1017 (Fed. Cir. 2018), these principles were applied to PTAB appeals. The

court ruled that when a future infringement suit is reasonably likely, the likelihood of such action is of sufficient "immediacy" to support standing to appeal the PTAB decision. 889 F.3d at 1282.

On extensive precedent, it is apparent that a patent licensee has standing to challenge validity of the patents to which it is licensed, including challenge in federal court on appeal from PTO decisions.

Qualcomm argues that because Apple's license is to Qualcomm's entire portfolio, Apple's challenge to a few patents would not relieve Apple of its payment obligation, and thus Apple does not have standing as to these few patents. Apple points out that its concern is with the patents here on appeal, not a portfolio of patents for which no infringement charge has been made. Precedent has considered this argument; *see, e.g.*, *Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356, 1364–65 (Fed. Cir. 2015) (a licensee has standing to challenge validity even though other barriers to commercial activity remain in place); *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (patent owner's refusal to offer a covenant not to sue "suggests that there is an active and substantial controversy between the parties regarding their legal rights with respect to those patents"). As in *Arkema*, here Qualcomm refused to license Apple for the life of these patents.

The only area in which standing to appeal has occasionally been rejected are cases in which the challenger has no direct or economic interest in the outcome of the appeal. In *Consumer Watchdog*, cited *ante,* this court found no standing to appeal a PTAB decision because the appellant was "a nonprofit consumer rights organization." 753 F.3d at 1263. The court observed that the appellant had "not alleged . . . that it is an actual or prospective competitor . . . or licensee of the" patent-in-suit. *Id.* at 1260. Although the Supreme Court had observed in *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) that even a

"recreational" or "aesthetic" interest may suffice to establish standing, the Court has considered the particular facts; for example, in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Court held that the asserted injury of being unable to view and study endangered species without concrete plans to do so was not sufficiently "actual or imminent" to establish constitutional standing. *Id.* at 563, 565. Similarly in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), where a member of the Institute "asserted, first, that he had suffered injury in the past from development on Forest Service land," due to timber sales covered by the challenged regulations, the Court concluded: "That does not suffice [to establish standing] for several reasons: because it was not tied to application of the challenged regulations, because it does not identify any particular site, and because it relates to past injury rather than imminent future injury that is sought to be enjoined." *Id.* at 495.[3]

The only relevance of these public interest cases to this appeal is that the panel majority and the *Apple I* court rely on them to support its decision of lack of standing. In contrast with non-profit public-interest litigants, Apple's injury is imminent and ongoing. In Apple's words: "There can be no question, then, that Apple is suffering a concrete present harm by having to pay royalties to be free from a

---

[3] The Court did not foreclose public interest litigation, and in *Defenders of Wildlife*, Justice Stevens observed in concurrence that "we have no license to demean the importance of the interest that particular individuals may have in observing any species or its habitat, whether those individuals are motivated by esthetic enjoyment, an interest in professional research, or an economic interest in preservation of the species. Indeed, this Court has often held that injuries to such interests are sufficient to confer standing, and the Court reiterates that holding today." 504 U.S. at 582 (citation omitted).

patent it believes to be invalid." Case No. 20-1683, Apple Reply Br. 2. This of itself satisfies Article III; *see, e.g.*, *Sanofi-Aventis U.S., LLC v. Dr. Reddy's Labs., Inc.*, 933 F.3d 1367, 1374 (Fed. Cir. 2019) ("In some circumstances, patent claims may create a controversy sufficient for declaratory judgment jurisdiction even when there is no risk of infringement . . . .").

In sum, the filing of infringement suits by Qualcomm, and the temporary license taken by Apple, support Apple's standing to pursue these appeals, reinforced where, as here "Congress has accorded a procedural right to a litigant, such as a right to appeal an administrative decision . . . ." *Amerigen Pharms.*, 913 F.3d at 1082 n.11.

## II

### *The special statutory estoppel of PTAB decisions reinforces the right of appeal*

The statutory estoppel of post-grant decisions is integral to the America Invents Act's purpose of expeditious and economical final resolution of certain validity issues:

**35 U.S.C. § 325(e) – Estoppel.**

(2) *Civil actions and other proceedings.*— The petitioner in a post-grant review of a claim in a patent under this chapter that results in a final written decision under section 328(a), . . . may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that post-grant review.

This estoppel provision is a novel change from previous validity procedures. As stated in *PPG Industries, Inc. v. Valspar Sourcing, Inc.*, 679 F. App'x 1002, 1005 (Fed. Cir.

2017), the appellant's "stake is enhanced by the 'estoppel provisions contained within the inter partes reexamination statute.'" (quoting *Consumer Watchdog*, 753 F.3d at 1262). It cannot have been the legislative intent that a PTAB decision would achieve estoppel in district court if appeal of that decision were barred. Rather, the statutory structure includes appeal of the PTAB decisions to the Federal Circuit, as codified at 35 U.S.C. § 329 and § 141.

Apple was sued for infringement, leading to this six-year license. This unresolved controversy of itself suffices to establish standing to challenge validity of the licensed patents, for Apple's "risk of liability is not 'conjectural' or 'hypothetical.'" *See Adidas AG v. Nike, Inc.*, 963 F.3d 1355, 1357 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021) ("In *Dupont* . . . [w]e determined that the patent owner's refusal to grant appellant a covenant not to sue further confirmed that appellant's risk of injury was not 'conjectural' or 'hypothetical'") (citing *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1005 (Fed. Cir. 2018)); *Gen. Elec. Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1342 (Fed. Cir. 2020) (finding standing where challenger's "specific investment in continued development of a geared turbofan engine design, its avowed preference to offer this design for sale, and its informal offer of this engine to [patentee] in an ongoing bidding process together establish that [challenger] will *likely* engage in the sale of this geared turbofan engine design to customers.") (emphasis in original).

The estoppel provision of itself provides Apple with standing to appeal the PTAB decisions, and provides this court with jurisdiction to receive the appeals. Constitutional considerations were recognized in the America Invents Act, and are reflected in the provisions for judicial review. In addition, there is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986). *See Smith v. Berryhill*, 139 S. Ct. 1765, 1777

(2019) ("[T]he burden for rebutting" the presumption of judicial review "is 'heavy'. . .") (quoting *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015)).  Judicial review is part of Patent Office history, and is fundamental to the new procedures created by the America Invents Act:

> **35 U.S.C. § 329 – Appeal.**  A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 328(a) may appeal the decision pursuant to sections 141 through 144. Any party to the post-grant review shall have the right to be a party to the appeal.

This statutory provision is not negated when the appellant is also a licensee.  The legislative record shows that appellate procedures for the AIA were considered; the Senate record refers to the direct appeal to the Federal Circuit as part of the new inter partes review process:

> The bill also eliminates intermediate administrative appeals of inter partes proceedings to the BPAI, instead allowing parties to only appeal directly to the Federal Circuit.  By reducing two levels of appeal to just one, this change will substantially accelerate the resolution of inter partes cases.

157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).  *See also* H.R. Rep. 112-98 pt. 1 at 47 ("Inter partes reviews will be conducted before a panel of three APJs.  Decisions will be appealed directly to the Federal Circuit.").

Federal Circuit review is an integral component of the new post-grant procedures.  It does not violate the Constitution when the appellant is a licensee of the patent being reviewed.

III

### *Vacatur of the PTAB decision is appropriate if appeal is deemed barred by the Constitution*

The Court recently reviewed the status of PTAB decisions under the Appointments Clause, *see United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), and concluded that PTAB decisions must be amenable to review by a principal agency officer, or the decisions must be vacated. On similar principles, if PTO decisions are denied the right of judicial review, they must be vacated.

The Court has approved vacatur in analogous circumstances of unreviewed agency action, *see A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329 (1961) (vacatur for mootness is "applicable to unreviewed administrative orders"); *see also PNC Bank Nat'l Ass'n v. Secure Axcess, LLC*, 138 S. Ct. 1982 (mem.) (2018) (the Court ordered vacatur of PTAB decision of invalidity as moot because patent owner dismissed its infringement suit with prejudice (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)).

The Federal Circuit has vacated PTAB decisions for various reasons; *see, e.g. Valspar Sourcing, Inc. v. PPG Indus., Inc.*, 780 F. App'x 917, 921 (Fed. Cir. 2019) (vacating PTAB decision and rejecting the proposition that a party "'should suffer the consequences' of its choice to unilaterally moot the original appeal" by "leaving in place certain adverse determinations from the proceedings below"). The court explained that "*Munsingwear* and its progeny instruct us to prevent appellants from being forced to acquiesce in a judgment that they can no longer challenge on the merits. They further instruct us to protect all parties from the collateral effects of a case that is mooted before an appellate determination on the merits." *Id.* Similarly here, Apple should not be subject to estoppel if it is prevented from challenging the PTAB decision on the merits.

The panel majority proposes that Apple "forfeited" the right to appeal to the Federal Circuit and forfeited access to vacatur of the PTAB decision. Maj. Op. at 8. The record contains no action or inaction by Apple suggestive of forfeiture. To the contrary, these four cases are Apple's statutory appeals from the PTAB decisions, and *Munsingwear* instructs that parties should not be "forced to acquiesce in a judgment that they can no longer challenge on the merits." *Valspar*, 780 F. App'x at 921 (citing *Munsingwear*, 340 U.S. at 39–41). Apple duly filed these appeals of the PTAB's decisions. If the appeals are now deemed barred, the PTAB decisions are appropriately vacated.

## CONCLUSION

Apple has standing to appeal these PTAB decisions to the Federal Circuit, and the Federal Circuit has jurisdiction to receive and decide these appeals. If appeal is nonetheless denied, the PTAB decisions require vacatur. From my colleagues' contrary rulings, I respectfully dissent.